BTXN 117a (rev. 10/02)

EXHIBIT A

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re:<br>Lenpar Operations, LLC<br><br>Debtor(s)<br>Scott M. Seidel<br>Plaintiff(s)<br>vs.<br>Mark Parmerlee, Michael Parmerlee, Diane Parmerlee, Matthew Parmerlee, Henry Leonard, Chris Mitchell, Lenpar, LLC., Golden Tree Restaurants, LLC., MP Interests, Ltd., F.P. Grapevine 2023, LLC., F.P Fort Worth 2022, LLC., GFC Leasing Corp., LLC., MP Interests Management, LLC., Golden Operating Corporation, Marshall Fisco, James Maxwell, Nancy Jacobi, David Rutowski & Cheryl Bullard<br>Defendant(s) | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.: 23−32492−sgj7<br>Chapter No.: 7<br><br>Adversary No.: 25−03115−sgj |

## SUMMONS IN AN ADVERSARY PROCEEDING

To the above−named defendant:

You are hereby summoned and required to serve upon **Jacob J King**, Plaintiff's attorney (or if Plaintiff is not represented by counsel, upon Plaintiff), whose address is **Munsch Hardt Kopf & Harr, P.C.**
**500 N. Akard St., Suite 4000**
**Dallas, TX 75201** , either a motion or an answer to the complaint which is now served upon you. If you elect to respond first by motion, as you may pursuant to Fed. R. Bankr. P. 7012, that governs the time within which your answer must be served. Otherwise, you are required to serve your answer upon Plaintiff's attorney (or upon Plaintiff if Plaintiff is not represented by counsel) within 30 days of the date of issuance of this summons by the clerk (or by the following date prescribed by the court: N/A) except that the United States or an office or agency thereof shall serve an answer to the complaint within 35 days after the date of issuance of the summons.

*{If this summons and complaint is served in a foreign country}* Service of your answer must be made by the following date prescribed by the court N/A.

The motion or answer served by you must be filed with this court before service or within a reasonable time after service. **IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS SUMMONS, JUDGMENT BY DEFAULT WILL BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

DATED: 10/31/25

FOR THE COURT:
Stephen J Manz, Clerk of Court

by: /s/Michael Edmond, Deputy Clerk



Case 25-03115-sgj Doc 7-1 Filed 11/04/25 Entered 11/04/25 15:19:18 Desc Exhibit A Page 2 of 43

In Re: Seidel v. Parmerlee et al
Case No. 23−32492−sgj7 −7
Adv. No. 25−03115−sgj

## SUMMONS SERVICE EXECUTED

I,______________________________________________________________________

of**_____________________________________________________________________

certify:

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and all times during service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made;

That on the __________ day of ____________________________________,_______ I served a copy of the within summons, together with the complaint filed in this proceeding, on

the defendant in this proceeding, by *{describe here the mode of service}*

the said defendant at

I certify under penalty of perjury that the foregoing is true and correct.

Executed on ____________________ ______________________________
*(Date)* *(Signature)*

** ______________________________________________________________________
*State mailing address*

BTXN 117n (rev. 02/2015)

**A copy of this *Notice to Litigants* should be served on the defendant along with the Summons and Complaint.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF TEXAS

## NOTICE TO LITIGANTS

**You have been named as a defendant in an adversary proceeding, the outcome of which could affect your bankruptcy discharge. Even if you have already received a discharge, this is a serious matter that you should not ignore.**

Individual litigants are entitled to appear without an attorney and represent themselves in the Bankruptcy Court. However, the rules can be quite technical and failure to comply with the rules can have severe consequences. Before deciding to appear on your own, you should consider consulting an attorney. If you were represented in your chapter 7 or 13 bankruptcy case by counsel, you should notify that attorney that you have been named as a defendant.

If you cannot afford an attorney, you may be eligible for free legal representation through Legal Aid of NorthWest Texas (LANWT) or the Dallas Volunteer Attorney Program (DVAP). To determine if you are eligible, you must apply for legal representation at a regularly−scheduled neighborhood legal clinic. In addition, if you were recently represented by an attorney in a chapter 7 or 13 case, you should notify that attorney immediately.

Upon application at a neighborhood legal clinic, you will be screened for eligibility based on your current income and the availability of any other assets to pay for legal services. If it is determined that you are eligible, an attorney may be found who will represent you without payment of attorneys' fees. Please note that, even if you are eligible, you may still be responsible for the payment of costs, such as court reporter fees, deposition transcripts, court transcripts, postage and copies.

On the last page of this notice, you will find a list of neighborhood legal clinics, their locations, and the times they meet. When you make contact with DVAP or LANWT, please have your copy of the summons and complaint with you, as well as a copy of any *Schedule of Assets and Liabilities and Statement of Financial Affairs* filed in your bankruptcy case.

# Neighborhood Legal Clinics

**EAST DALLAS**
1st & 3rd Thursdays at 5:00 pm
Grace United Methodist Church
4105 Junius at Haskell
Dallas, TX 75246

**SOUTH DALLAS**
1st, 2nd and 4th Tuesdays at 5:00 pm
Martin Luther King, Jr. Center
Core Services Building,
2922 Martin Luther King Blvd.,
Room 122
Dallas, Texas 75215

**FRIENDSHIP WEST BAPTIST CHURCH**
3rd Wednesday at 5:30 pm
2020 West Wheatland Road
Dallas, Texas 75232

**TRIANGLE NEIGHBORHOOD**
3rd Tuesdays at 5:00 pm
(excluding summer)
St. Phillip.s Community Center
1600 Pennsylvania Avenue
Dallas, Texas 75215

**WEST DALLAS**
2nd & 4th Thursdays at 5:00 pm
Wesley−Rankin
Community Center
3107 N. Winnetka
Dallas, Texas 75212

**GARLAND**
3rd Thursday at 5:00 pm
(excluding December)
Salvation Army
Downtown Garland
457 W. Avenue D
Garland, Texas 75040

**FORT WORTH**
3rd Tuesday at 5:00 pm
(excluding December)
Legal Aid of NorthWest Texas
600 E. Weatherford St
Fort Worth, TX 76102

**PLEASE TAKE NOTE**

Clinics may be cancelled because of bad weather, federal holidays, or during elections. To confirm that a clinic will occur as scheduled, contact (214) 243−2247 for Dallas or Garland clinics, or (800) 955−3959 for Fort Worth clinics.

Please bring proof of income and residency, as well as a copy of the *Schedule of Assets and Liabilities and Statement of Financial Affairs* filed in your bankruptcy case and the summons and complaint. If you have been sued, please bring your legal documents.

Thomas D. Berghman, Esq.
Texas Bar No. 24082683
J. Kyle Jaksa, Esq.
Texas Bar No. 24120923
Jacob J. King, Esq.
Texas Bar No. 24136951
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR SCOTT M. SEIDEL, TRUSTEE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-32492-sgj7 |
| LENPAR OPERATIONS, LLC, | § | |
| | § | Chapter 7 |
| Debtor. | § | |
| | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 25-________________ |
| | § | |
| MARK PARMERLEE, MICHAEL PARMERLEE, DIANE PARMERLEE, MATTHEW PARMERLEE, HENRY LEONARD, CHRIS MITCHELL, LENPAR, LLC, GOLDEN TREE RESTAURANTS, LLC, MP INTERESTS, LTD., F.P. GRAPEVINE 2023, LLC, F.P. FORT WORTH 2022, LLC, GFC LEASING CORP., LLC, MP INTERESTS MANAGEMENT, LLC, GOLDEN OPERATING CORPORATION, MARSHALL FISCO JR., JAMES MAXWELL, NANCY JACOBI, DAVID RUTOWSKI, AND CHERYL BULLARD | § | |
| | § | |
| Defendant(s). | § | |
| | § | |

**TRUSTEE'S ORIGINAL COMPLAINT**

TO THE HONORABLE STACEY G.C. JERNIGAN, CHIEF U.S. BANKRUPTCY JUDGE:

COMES NOW Scott M. Seidel (the "Trustee"), the duly appointed chapter 7 trustee of the bankruptcy estate (the "Estate") of Lenpar Operations, LLC (the "Debtor"), the debtor in the above styled and numbered Chapter 7 bankruptcy case (the "Bankruptcy Case"), and the plaintiff in the above styled and numbered adversary proceeding (the "Adversary Proceeding"), and files this his *Original Complaint* (the "Complaint"), complaining of Mark Parmerlee, Michael Parmerlee, Diane Parmerlee, Matthew Parmerlee, Henry Leonard, Chris Mitchell, Lenpar LLC, Golden Tree Restaurants, LLC, MP Interests, Ltd., F.P. Grapevine 2023, LLC, F.P. Fort Worth 2022, LLC, GFC Leasing Corp., MP Interests Management, LLC, Golden Operating Corporation, Marshall Fisco Jr., James Maxwell, Nancy Jacobi, David Rutowski, and Cheryl Bullard (the "Defendants," and each, individually, a "Defendant"), and for cause and action would respectfully show the Court as follows:

## I. SUMMARY

1. This is an action to avoid insider transactions, prevent management from pawning off capital contributions as intercompany debt, and holding management accountable for violating duties owed to the Debtor. The Defendants include the ultimate owners of the Debtor, Mark Parmerlee, Michael Parmerlee, Diane Parmerlee, and Matthew Parmerlee (the "Owners"), with the Debtor being one of approximately 29 subsidiaries falling under the Golden Tree Restaurants, LLC umbrella. Among those 29 subsidiaries are Golden Operating Corporation, GFC Leasing Corp., LLC, and Lenpar, LLC. All of these subsidiaries made capital contributions throughout the years to the Debtor, with money flowing between the subsidiaries, on an as-needed basis, but never enough to fully capitalize the Debtor. This intention was made clear on October 2, 2023, when weeks before the Debtor filed for bankruptcy, Debtor's management caused the Debtor to enter

into intercompany "loan" agreements, transforming these capital contributions into intercompany debt that would become the lion-share of the money owed by the Debtor. These "loans," along with the preferential transfers to insiders and failure to collect intercompany account receivables make it clear that management for the Debtor never meant to capitalize the Debtor but always considered the Debtor as an entity that was a part of the overall business. The Debtor was not viewed as a separate corporate existence, but a branch to be used or removed for the good of the insiders and to the derogation of the Debtor's creditors. As such, management never needed the Debtor to succeed, especially if all assets could be safely transferred to the various other subsidiaries that fall under the Owners' umbrella. These actions violated management's duties of loyalty to the Debtor and exacerbated the Debtor's losses while impinging on the rights of innocent non-insider creditors.

## II. JURISDICTION AND VENUE

2. On October 31, 2023 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, thereby initiating the Bankruptcy Case and creating the estate (the "Estate").

3. The Trustee is the duly appointed Chapter 7 trustee of the Estate.

4. This Court has subject matter jurisdiction over this Complaint under 28 U.S.C. § 1334. Such jurisdiction is core under 28 U.S.C. § 157(b)(2).

5. To the extent any matter asserted herein does not give rise to a core proceeding, the Trustee consents to the entry of a final judgment on any issue or claim asserted in this Adversary Proceeding.

6. Venue of this Complaint is proper in this District and Division under 28 U.S.C. §§ 1408 and 1409.

## III. PARTIES

7. The Trustee is the duly appointed Chapter 7 trustee of the Debtor and the Estate, with authority to assert causes of action on behalf of the Debtor and the Estate and sues herein in such capacity only.

8. Mark Parmerlee is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Mark Parmerlee may be served with process in this Adversary Proceeding anywhere that he may be found, including his home address: 13227 Hughes Ln, Dallas, TX 75240.

9. Diane Parmerlee is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Diane Parmerlee may be served with process in this Adversary Proceeding anywhere that she may be found, including her home address: 13227 Hughes Ln, Dallas, TX 75240.

10. Michael Parmerlee is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Michael Parmerlee may be served with process in this Adversary Proceeding anywhere that he may be found, including his home address: 634 Greenleaf Dr., Richardson, TX 75080.

11. Matthew Parmerlee is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Matthew Parmerlee may be served with process in this Adversary Proceeding anywhere that he may be found, including his home address: 7008 Spring Valley Rd, Dallas, TX 75254.

12. Henry Leonard is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Henry Leonard may be served with process in this Adversary

Proceeding anywhere that he may be found, including his home address: 1682 Old Oak Dr., Tyler, TX 75703.

13. Chris Mitchell is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Chris Mitchell may be served with process in this Adversary Proceeding anywhere that he may be found, including his home address: 1805 W. Spring Creek Pkwy. Apt TT1, Plano, TX 75023.

14. Marshall Fisco Jr. is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Marshall Fisco Jr. may be served with process in this Adversary Proceeding anywhere that he may be found, including his home address: 4218 Running Brook Dr., Rowlett, TX 75088.

15. James Maxwell is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), James Maxwell may be served with process in this Adversary Proceeding anywhere that he may be found, including his home address: 200 Parkhaven Dr., McKinney, TX 75071, and place where he regularly conducts a business or profession: 1131 Rockingham Dr. Ste 250, Richardson, TX 75080.

16. Nancy Jacobi is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Nancy Jacobi may be served with process in this Adversary Proceeding anywhere that she may be found, including her home address: 6301 Ponderosa Ln. Colleyville, TX 76034, and place where she regularly conducts a business or profession: 1131 Rockingham Dr. Ste 250, Richardson, TX 75080.

17. David Rutkowski is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), David Rutkowski may be served with process in this Adversary

Proceeding anywhere that he may be found, including his home address: 1301 Jackson Trl, Azle, TX 76020.

18. Cheryl Bullard is an individual and a resident of the State of Texas. Pursuant to Fed. R. Bankr. P. 7004(b), Cheryl Bullard may be served with process in this Adversary Proceeding anywhere that she may be found, including her home address: 2225 Pittner Ln., Plano, TX 75025.

19. Lenpar, LLC is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Bankruptcy Rule 7004(b)(3), the Trustee may serve process on the Defendant by and through its Registered Agent by U.S. first class mail, postage prepaid, as follows: Lenpar, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S. MoPac Expy Ste 220., Austin, TX 78746.

20. Golden Operating Corporation is a corporation organized and existing under the laws of the State of Texas. Pursuant to Bankruptcy Rule 7004(b)(3), the Trustee may serve process on the Defendant by and through its Registered Agent by U.S. first class mail, postage prepaid, as follows: Golden Operating Corporation, c/o James Maxwell, Registered Agent, 1131 Rockingham Dr, Ste 250, Richardson, Texas 75080.

21. MP Interests, Ltd. is a limited partnership organized and existing under the laws of the State of Texas. Pursuant to Bankruptcy Rule 7004(b)(3), the Trustee may serve process on the Defendant by and through its Registered Agent by U.S. first class mail, postage prepaid, as follows: MP Interests, Ltd., c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S. MoPac Expy Ste 220., Austin, TX 78746

22. F.P. Grapevine 2023, LLC is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Bankruptcy Rule 7004(b)(3), the Trustee may

serve process on the Defendant by and through its Registered Agent by U.S. first class mail, postage prepaid, as follows: F.P. Grapevine 2023, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S. MoPac Expy Ste 220., Austin, TX 78746.

23. F.P. Fort Worth 2022, LLC is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Bankruptcy Rule 7004(b)(3), the Trustee may serve process on the Defendant by and through its Registered Agent by U.S. first class mail, postage prepaid, as follows: F.P. Fort Worth 2022, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S. MoPac Expy Ste 220., Austin, TX 78746.

24. GFC Leasing Corp., LLC is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Bankruptcy Rule 7004(b)(3), the Trustee may serve process on the Defendant by and through its Registered Agent by U.S. first class mail, postage prepaid, as follows: GFC Leasing Corp., LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S. MoPac Expy Ste 220., Austin, TX 78746.

25. MP Interests Management, LLC is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Bankruptcy Rule 7004(b)(3), the Trustee may serve process on the Defendant by and through its Registered Agent by U.S. first class mail, postage prepaid, as follows: MP Interests Management, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S. MoPac Expy Ste 220., Austin, TX 78746.

26. Golden Tree Restaurants, LLC is a limited liability company organized and existing under the laws of the State of Texas. Pursuant to Bankruptcy Rule 7004(b)(3), the Trustee may serve process on the Defendant by and through its Registered Agent by U.S. first class mail, postage prepaid, as follows: Golden Tree Restaurants, LLC, c/o Capitol Corporate Services, Inc., Registered Agent, 1501 S. MoPac Expy Ste 220., Austin, TX 78746.

## IV. FACTUAL BACKGROUND

27. The Debtor was formed on January 3, 2018, when its certificate of formation was filed with the Texas Secretary of State. The Debtor's membership interest is wholly owned by Lenpar, LLC, the Debtor's parent. Lenpar, LLC itself is part of a larger affiliated restaurant conglomerate of companies.

28. Henry Leonard, Mark S. Parmerlee, and Chris Mitchell (the "Managers") managed the operations of the Debtor, along with the directors and officers of the Debtor, namely Mark Parmerlee, Marshall Fisco Jr., James Maxwell, Nancy Jacobi, David Rutowski, and Cheryl Bullard (collectively, the "D&O", and together with the Managers, "Management"). Management had duties to act in the best interests of the Debtor, and to ensure the Debtor performed basic corporate functions like the collection of accounts receivable and maintaining profitability.

29. The Debtor was the operating company for the upscale pizza concept Fireside Pies. The Debtor held the obligations for Fireside Pies and generated the concept's revenue through sales of pizza, beer, and other food and beverages.

### A. The Golden Tree Enterprise Structure.

30. When viewed in isolation, there is nothing particularly remarkable about the Debtor's corporate birth, life, and death. However, when viewed in light of the corporate structure created by Management, it becomes clear that the Debtor's death was exacerbated by, if not outright caused by, the actions and omissions of Management which unfairly impinged the rights of innocent non-insider creditors.

31. The Debtor sits within a corporate structure that owns and operates the successful Golden Chick franchise. Golden Chick is ultimately owned by the Owners, who are all limited partners in MP Interests, Ltd. which owns Golden Tree Restaurants, LLC ("Golden Tree").

Through MP Interests, Ltd., the Owners own a majority interest in all the various holding companies for the other businesses, which in turn hold all the operating companies that house the Owners' various restaurant concepts. While the Owners' most famous concept is Golden Chick, the Owners also own (i) Texadelphia Bar & Grill, (ii) JC's Burger Bar, (iii) JC's Burger House, (iv) Heff's Burgers, (v) Lola's, (vi) Jalapeno Tree, and formerly (vii) Fireside Pies (the "Golden Tree Enterprise"). The Owners are experienced restaurateurs. Because they wholly own Golden Tree, the Owners do not have a stake in ensuring that any particular concept succeeds. Instead, the Owners simply need to ensure that the Golden Tree Enterprise remains profitable as a whole. The Owners' motive to make the Golden Tree Enterprise profitable as a whole led to many of the claims raised in this Complaint because Management ultimately used the demise of the Debtor to benefit the Golden Tree Enterprise to the detriment of the Debtor's non-insider creditors.

**B. Management Never Acted in the Debtor's Best Interest.**

32. Management handled the day-to-day operations of the Debtor which included operational concerns as well as core business functions such as the collection of accounts receivable and bookkeeping. Many of the Debtor's core functions, like bookkeeping and financials, were never separate from the rest of the enterprise.

33. For example, Golden Tree's general ledger shows many transactions involving the Debtor and insider affiliates which do not show up on the Debtor's bank statements. It is unclear, but it appears that there are debits and credits on the Golden Tree's general ledger which are attributed to the Debtor, but no money ever entered or left the Debtor's bank account. There are also transfers which show up on the Debtor's bank statements to insider affiliated that are not recorded as a Debtor transfer on Golden Tree's general ledger. These accounting inconsistencies not only make it difficult to investigate the Debtor's financial past but also show the lack of

corporate distinction between the Debtor and the enterprise. Management failed to ensure that the Debtor remained a separate corporate entity, and as a result allowed the Debtor to become a mere instrumentality of the enterprise, and a sham for the enterprise to defraud the Debtor's non-insider creditors.

34. Upon information and belief, Management violated its duty of due care to the Debtor through the lack of financial distinction between the Debtor and the enterprise. The Debtor was never profitable. It depended on capitalization from the enterprise but was never fully capitalized. The equity infusions from Lenpar, LLC and from Golden Operating Corporation were booked as intercompany payables. Golden Tree's ledger shows that Lenpar, LLC and Golden Operating Corporation paid several millions of dollars into the Debtor but also received several millions of dollars from the Debtor during the four (4) years preceding the Petition Date. It is difficult to evaluate these transactions because the transactions recorded on the general ledger do not line up with the economic reality of the Debtor's bank statements. However, it appears that Lenpar, LLC and Golden Operating Corporation were funneling money into and out of the Debtor to obtain some benefit for themselves and accomplishing transactions wholly unrelated to the Debtor's business purpose. Management permitted this to happen and in doing so breached their duties to the Debtor to operate the Debtor with due care.

35. Management also violated its duty of loyalty to the Debtor in two ways: (i) by failing to collect intercompany receivables, and (ii) by allowing an insider affiliate to strip the Debtor's only profitable location. The Debtor's schedules show that the Debtor is owed approximately $1,665,590.82 (the "Receivables") from insider affiliated companies that are also under the Golden Tree Enterprise umbrella. *Schedules of Assets and Liabilities* [Dkt. No. 12]. Mark Parmerlee exercises ubiquitous control over the entire Golden Tree Enterprise. He could

have authorized the payment of these Receivables which would have paid off the Debtor's non-insider debt in full. However, he chose not to, instead booking unsubstantiated payables and refusing to allow the Debtor to collect its intercompany receivables.

36. Management also violated its duty of loyalty by allowing the Golden Tree Enterprise to usurp a business opportunity from the Debtor. At its peak, the Debtor had several locations. The only location that was ever profitable was the Grapevine location. While the concept failed overall, the Owners had a desire to preserve their interest in the Debtor's one profitable location. However, that location would be subject to the non-insider claims if the Owners kept it in the Debtor. Therefore, fifteen (15) days before filing the Bankruptcy Case, Mark Parmerlee, as President of the Debtor, signed an asset purchase agreement which allowed F.P. Grapevine 2023, LLC, a subsidiary which had only been formed months prior in August 2023, to purchase all the assets the Debtor held related to the Grapevine location for $47,661.00. The other members of Management could have stopped this action but did not. Thus, Management allowed an insider entity to usurp a valuable business opportunity from the Debtor and allowed the Managers to put the Debtor into bankruptcy while maintaining the one profitable business line.

**C. The Owners Recharacterized Its Equity Infusions as Debt on the eve of the Bankruptcy Case.**

37. The Owners kept consolidated financials at the Golden Tree level, as well as at the individual entity level. These financials show that Owners and Management booked receivables and payables for the Debtor that do not appear on the Debtor's physical financial documents, such as the Debtor's bank statements. Lenpar, LLC and Golden Operating Corporation were also used to capitalize the Debtor, but such capitalization was insufficient. Golden Tree always recorded the capital contributions as account payables. However, Golden Tree's creative bookkeeping does not change the fact that in substance the Debtor's affiliates were making capital contributions which

should have been characterized as equity but were attempted to be documented as debt on the eve of the Bankruptcy Case to inundate the Estate with insider debt.

38. The Debtor has $1,017,971.57 in scheduled and claimed non-insider debt. The Debtor also has $8,614,301.21 in insider debt. The Debtor's insiders filed the following claims in the Bankruptcy Case:

| **The "Insider Claimants"** | **Proof of Claim Number** | **Amount** |
|---|---|---|
| F.P. Fort Worth 2022, LLC | 6 | $262,457.57 |
| F.P. Grapevine 2023, LLC | 7 | $101,582.41 |
| GFC Leasing Corp., LLC | 8 | $497,250.00 |
| Golden Operating Corporation | 9 | $5,161,711.23 |
| GTR Operating, LLC | 10 | $25,620.59 |
| Lenpar Franchising, LLC | 11 | $2,450.00 |
| Lenpar, LLC | 12 | $2,563,229.41 |
| **Total** | | $8,614,301.21 |

(collectively, the "Insider Proofs of Claim")

39. These alleged debts arose due to the Golden Tree's bookkeeping which listed unsubstantiated payables and receivables for the Debtor, some of which where there is no record that the money ever benefited the Debtor at all. Nevertheless, the Debtor's insiders think they are entitled to be repaid these funds in priority alongside the Debtor's general unsecured creditors.

40. The Insider Proofs of Claim should be either recharacterized as equity or subordinated to the non-insider general unsecured creditors. None of the Insider Proofs of Claim were ever documented, except for on Golden Tree's general ledger, until less than a month before the Bankruptcy Case. On October 2, 2025, Mark Parmerlee caused the Debtor to sign a Lenpar

Operations, LLC Line of Credit Agreement (the "Credit Agreement(s)") and corresponding Lenpar Operations, LLC Promissory Note (the "Note(s)") with the following insider entities:

| The "Insider Noteholders" | Obligation Amount |
|---|---:|
| Golden Operating Corporation | $5,539,162.00 |
| GFC Leasing Corp., LLC | $618,800.00 |
| Lenpar, LLC | $2,353,876.00 |
| **Total** | $8,511,838.00 |

41. The Credit Agreements and Notes are avoidable as fraudulent transfers, preferences, and blatant attempts to thwart the Chapter 7 process by burdening the Estate with insider claims mere weeks before selling the Debtor's only profitable business line and putting the Debtor into bankruptcy. Therefore, the underlying payables represented by the Credit Agreements and Notes should be either recharacterized or subordinated to general unsecured debt.

**D. Management Prevented the Debtor from Collecting Receivables.**

42. Management violated its fiduciary duties by failing to exercise reasonable business diligence in collecting the Debtor's receivables. This violation's nature appears even more insidious when coupled with the knowledge that Mark Parmerlee has common control over the Debtor and the entities which owe receivables to the Debtor, and the amount of these receivables is sufficient to pay all non-insider creditors in the Bankruptcy Case. On the Petition Date, the following entities owed the Debtor the following receivables:

| The "Insider Receivables Obligors" | The "Receivables" | Alleged Claim |
|---|---:|---:|
| Lenpar, LLC | $58,705.92 | $2,563,229.41 |
| F.P. Fort Worth 2022, LLC | $1,465,496.77 | $262,457.57 |
| F.P. Grapevine 2023, LLC | $109,851.25 | $101,582.41 |

| | | |
|---|---|---|
| GFC Leasing Corp., LLC | $0.00 | $497,250.00 |
| Golden Operating Corporation | $5,243.98 | $5,161,711.23 |
| GTR Operating, LLC | $0.00 | $25,620.59 |
| Lenpar Franchising, LLC | $5,209.72 | $2,450.00 |
| Lenpar Beverage, LLC | $2,622.00 | $00.00 |
| TEX-RIC 2020 | $18,461.19 | $00.00 |
| **Total** | $1,665,590.83 | $8,614,301.21 |

43. The Receivables could pay the non-insider unsecured creditors in full. Not only did the Debtor fail to collect the Receivables, when the Debtor filed its schedules, it marked all $1,665,590.83 in Receivables as uncollectible. Clearly, the Owners were attempting to protect their profitable enterprise, instead of returning any sort of recovery to the Debtor's unsecured creditors.

**E. Preferential and Fraudulent Transfers.**

44. In the year leading up to the Petition Date, the Golden Tree Enterprise allegedly made "a series of intercompany transfers among the debtor and its affiliates, the net effect of which is a cumulative $6.95MM liability of the debtor." *Statement of Financial Affairs*, at 14 [Dkt. No. 13]. Essentially, the Golden Tree Enterprise transferred money out of the Debtor in the year leading up to the Bankruptcy Case on the basis that it would reduce the Debtor's intercompany debt. However, such reasoning ignores that the Debtor should not have had intercompany debt in the first place, as the debt was an equity investment that the Golden Tree Enterprise had made in the Debtor.

45. Specifically, in the year leading up to the Bankruptcy Case, the following entities (the "Preferential Insider Transferees") received at least the following amounts from the Debtor:

Case 25-03115-sgj Doc 7-1 Filed 11/04/25 Entered 11/04/25 18:14:18 Desc Exhibit A Page 19 of 43

| The "Preferential Insider Transferees" | Amount |
|---|---|
| F.P. Fort Worth 2022, LLC | $732,000.00 |
| GFC Leasing | $68,287.20 |

46. The Preferential Insider Transferees were not entitled to these funds, and no underlying obligation justified the transfer of these funds to the Preferential Insider Transferees.

47. Further, the Debtor was for all purposes insolvent when it transferred the funds to the Preferential Insider Transferees as well as when it sporadically paid Matthew Parmerlee (together with the Preferential Insider Transferees, the "Insider Transferees") a total of $6,947.66 beginning in May 2022 and ending in November 2022. Management knew, and through them, the Insider Transferees would have known, that the Debtor was insolvent and had been struggling for years and would soon likely need to file for bankruptcy. Upon information and belief, the Insider Transferees still chose to accept these transfers, knowing these transfers would leave the Debtor without the funds to engage in business and drastically reducing any recovery to the Debtor's non-insider general unsecured creditors.

48. Additionally, there are other transfers recorded in the Golden Tree's general ledger that are booked as debits and credits to the Debtor which do not appear on the Debtor's bank statements. The Trustee therefore reserves the right to amend or supplement this complaint with any preferential or fraudulent transfers against any of the named defendants in this Adversary Proceeding.

## V. CAUSES OF ACTION

**COUNT I: BREACH OF THE DUTY OF DUE CARE**

49. The Trustee incorporates his allegations above and below.

50. The Trustee has standing to sue for damages incurred by the Debtor due to the acts and omissions of the Debtor's directors and officers.

51. Managers of a Texas domestic limited liability company owe fiduciary duties during their management of the company. Specifically, managers and officers of a limited liability company owe the company the duty of due care to the company which requires the managers and officers to use the same care in operating the company that an ordinarily prudent person would use under similar circumstances.

52. Since the Debtor's formation, and at all times material hereto, Henry Leonard, Mark Parmerlee, and Christ Mitchell were the managers and officers of the Debtor. As of the Petition Date, Marshall Fisco Jr., James Maxwell, Nancy Jacobi, David Rutowski, Cheryl Bullard along with Mark Parmerlee were the Directors and Officers of the Debtor. Management was tasked with running the Debtor.

53. The foregoing breached their duty of due care to the Debtor by, among other things:

(1) Failing to adequately capitalize the Debtor and provide for its financial stability;

(2) Failing to adequately account for the Debtor's intercompany payables which consistently burdened the Debtor but provided no real benefit to the Debtor;

(3) Permitting the Golden Tree Enterprise to use the Debtor as an instrumentality to gain advantages to the detriment of the Debtor which in no way benefitted the Debtor;

(4) Failing to collect accounts receivable from solvent insider affiliated companies which could have paid off the Debtor's non-insider creditors in full;

(5) Permitting an insider and part of the Golden Tree Enterprise to acquire the Debtor's only profitable business line only a week prior to the filing of the Bankruptcy Case;

(6) Permitting insiders of the Debtor, and causing the Debtor to enter into, the Credit Agreements and Notes only three weeks prior to the filing of the Bankruptcy Case.

54. No prudent and independent managers or officers of a company would permit a much larger and more profitable operation to exert the type of dominance and abuse that the Golden Tree Enterprise exerted over the Debtor. The reality is that many of the transactions Management permitted the Debtor to enter into, or caused the Debtor to enter into, were not arm's length, provided no benefit to the Debtor, and were designed to allow the Golden Tree Enterprise to profit from the Debtor's failing condition.

55. Accordingly, the Trustee prays for (i) a judgment for breach of the duty of care against Management, (ii) monetary damages against each individual defined as Management, jointly and severally, in an amount to be proven at trial, and (iii) any other and further relief to which the Trustee shows himself justly entitled.

**COUNT II: BREACH OF THE DUTY OF LOYALTY**

56. The Trustee incorporates his allegations above and below.

57. The Trustee has standing to sue for damages incurred by the Debtor due to the acts and omissions of the Debtor's directors and officers.

58. Managers of a Texas domestic limited liability company owe fiduciary duties during their management of the company. Specifically, managers and officers of a limited liability company owe the duty of loyalty to the company, which is the duty to refrain from self-dealing, self-interested transactions, and to refrain from putting the Mangers' own personal interests above the Debtor's interests.

59. Since the Debtor's formation, and at all times material hereto, Henry Leonard, Mark Parmerlee, and Christ Mitchell were the managers of the Debtor. As of the Petition Date, Marshall Fisco Jr., James Maxwell, Nancy Jacobi, David Rutowski, Cheryl Bullard along with Mark Parmerlee were the Directors and Officers of the Debtor. Management was tasked with the running the Debtor.

60. The foregoing breached their duty of loyalty to the Debtor by, among other things:

(1) Failing to adequately capitalize the Debtor and provide for its financial stability;

(2) Failing to adequately account for the Debtor's intercompany payables which consistently burdened the Debtor but provided no real benefit to the Debtor;

(3) Permitting the Golden Tree Enterprise to use the Debtor as an instrumentality to gain advantages to the detriment of the Debtor which in no way benefitted the Debtor;

(4) Failing to collect accounts receivable from solvent insider affiliated companies which could have paid off the Debtor's non-insider creditors in full;

(5) Permitting an insider and part of the Golden Tree Enterprise to acquire the Debtor's only profitable business line only a week prior to the filing of the Bankruptcy Case;

(6) Permitting insiders of the Debtor, and causing the Debtor to enter into, the Credit Agreements and Notes only three weeks prior to the filing of the Bankruptcy Case.

61. All of Management's decisions show that they permitted the Owners to consistently place the interests of the Golden Tree Enterprise above the Debtor's interests. Management consistently allowed the Debtor to be used as an instrumentality of the Golden Tree Enterprise, and when the Debtor was no longer useful to the Golden Tree Enterprise, Management stripped it of its valuable assets, paid insiders, and left the Debtor without a penny in the Bankruptcy Case for non-insider creditors.

62. Accordingly, the Trustee prays for (i) a judgment for breach of the duty of loyalty against Management, (ii) monetary damages against each individual identified as Management, jointly and severally, in an amount to be proven at trial, and (iii) any other and further relief to which the Trustee shows himself justly entitled.

**COUNT III: SUBORDINATION OF INSIDER DEBT**

63. The Trustee incorporates his allegations above and below.

64. The Trustee has standing to allege a claim for the subordination of debt under Sections 510(c) and 544 of the Bankruptcy Code.

65. Under Section 510(c)(1), after notice and hearing, the Court may–

> (1) Under principals of equitable subordination, subordination for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

11 U.S.C. § 510(c)(1).

66. To establish a claim for equitable subordination, the Trustee must show that (i) the claimant engaged in inequitable conduct, (ii) the misconduct resulted in an injury to creditors or conferred and unfair advantage on the claimant, and (iii) equitable subordination of the claim is not inconsistent with the provisions of the Bankruptcy Code.

67. The entities which filed the Insider Proofs of Claim committed the following inequitable conduct in a concerted effort to divest the Debtor of all its value, and then to ensure that any distribution from the Estate primarily benefited insiders.

> (1) For years, the Insider Claimants made equity contributions to the Debtor which they booked as payables on Golden Tree's ledger even though no underlying documentation justified the characterization of these infusions as debt, or proof showing these payments benefited the Debtor;
>
> (2) The Insider Claimants used the Debtor as a mere instrumentality to coordinate transactions which provided a

benefit to the Golden Tree Enterprise without providing a benefit to the Debtor, and often to the Debtor's detriment;

(3) The Insider Claimants forced the Debtor to sign three Credit Agreements and Notes for the three largest Insider Proofs of Claim to change their equity infusions into debt in the Bankruptcy Case.

(4) The Insider Claimants divested the Debtor of its only profitable restaurant on the eve of the Bankruptcy Case, taking the store for the benefit of themselves and the Golden Tree Enterprise;

(5) Within one year of the Bankruptcy Case, Insider Claimants received preferential and fraudulent transfers;

(6) The Insider Claimants refused to pay their receivables due and owing to the Debtor, even though some of the Insider Claimants owe substantially more to the Debtor than the Debtor allegedly owes to them;

(7) Post-petition, the Insider Claimants caused the Debtor to characterize its accounts receivable as uncollectible to protect the Golden Tree Enterprise from collection efforts.

68. The misconduct of the Insider Claimants injured the Debtor's creditors by (i) diverting the Debtor of valuable assets which could have been used to satisfy the creditors, (ii) flooding the Bankruptcy Case with insider claims and thereby shrinking the creditors' pro rata distributions, and (iii) misrepresenting the collectability of accounts receivable which, if collected, could pay off the non-insider creditors in full.

69. The Insider Claimants papered up years of transactions on the eve of the Bankruptcy Case to recharacterize their equity contributions as debt while also divesting the Debtor of any valuable assets that could be used to pay non-insider creditors. The Debtor's accounts receivable alone would be sufficient to pay all non-insider creditors in full. Equity requires that the Court subordinate the Insider Proofs of Claim, to allow non-insider creditors to be paid in full.

70. Accordingly, the Trustee prays for (i) the entry a final judgment against the Insider Claimants for the subordination of the Insider Proofs of Claim in priority below the non-insider general unsecured creditors, and (ii) any other and further relief to which the Trustee shows himself justly entitled.

**COUNT IV: RECHARACTERIZATION OF INSIDER DEBT**

71. The Trustee incorporates his allegations above and below.

72. The Trustee has standing to allege a recharacterization claim under Sections 704(a)(5) and 544.

73. A claim for recharacterization of debt is essentially an objection to claim since it attacks the characterization of a debt as a claim instead of an equity interest. Accordingly, the Trustee hereby objects to the Insider Proofs of Claim on the basis that the Insider Proofs of Claim are more properly characterized as equity interests.

74. Recharacterization does not require proof of misconduct but rather requires the Trustee to prove that the Insider Proofs of Claim are, in substance, equity infusions and investments in the Debtor rather than bona fide payables. Courts analyze the following factors in determining whether a claim is an equity interest:

(1) the names given to the instruments, if any, evidencing the indebtedness;

(2) the presence or absence of a fixed maturity date and schedule of payments;

(3) the presence or absence of a fixed rate of interest and interest payments;

(4) the source of repayments;

(5) the adequacy or inadequacy of capitalization;

(6) the identity of interest between the creditor and the stockholder;

(7) the security, if any, for the advances;

(8) the corporation's ability to obtain financing from outside lending institutions;

(9) the extent to which the advances were subordinated to the claims of outside creditors;

(10) the extent to which the advances were used to acquire capital assets; and

(11) the presence or absence of a sinking fund to provide repayments.

75. There were never any underlying instruments, fixed rate of interests, payments schedule, repayment date, or maturity structure until the Credit Agreements and Notes were signed. The Credit Agreements and Notes provide illusory deadlines because at that point the Owners and Management knew or should've known that the Debtor would be filing the Bankruptcy Case and the only purpose of the Credit Agreements and Notes were to attempt to justify the Debtor's insider claims.

76. The Debtor never repaid the obligations because they were in reality equity infusions. Because the Golden Tree Enterprise characterized the equity infusions as debt, the Debtor was never properly capitalized to carry on its business and often ran a very marginal deficit.

77. The Debtor and the rest of the Golden Tree Enterprise are functionally identical and are in fact a single business enterprise that the Owners use to shield valuable assets and eliminate all risk from opening new concepts like the Debtor.

78. None of the Insider Claimants had any security for the advances.

79. The Insider Claimants, even though they initially funded the Debtor, did not take a secured position in the Debtor instead opting to remain unsecured likely due to the fact that these equity investments were never supposed to be claims in the first place.

80. The initial funds advanced to the Debtor were likely used to purchase improvements for the various locations further indicating the equity infusion nature of the advances.

81. All of these factors, taken together, establish that the Insider Proofs of Claim should be recharacterized as equity infusions. Accordingly, the Trustee prays for (i) a final order granting the Trustee's objection to the Insider Proofs of Claim and recharacterizing the Insider Proofs of Claim as equity investments in the Debtor, and (ii) any other and further relief to which the Trustee shows himself justly entitled.

**COUNT V: BREACH OF CONTRACT**

82. The Trustee incorporates his allegations above and below.

83. On the Petition Date the Insider Receivables Obligors owed the Debtor the Receivables through an express or implied contract.

84. To date, the Insider Receivables Obligors have not paid the Debtor.

85. Accordingly, the Trustee prays for (i) a judgment for the Receivables, and (ii) any other and further relief to which the Trustee shows himself justly entitled, including all available attorney's fees and expenses under section 38.001 of the Texas Civil Practice and Remedies Code.

**COUNT VI: QUANTUM MERUIT**

86. The Trustee incorporates his allegations above and below.

87. On the Petition Date the Insider Receivables Obligors owed the Debtor the Receivables through an express or implied contract. To date, the Insider Receivables Obligors have not paid the Debtor.

Case 25-03115-sgj Doc 1 Filed 10/31/25 Entered 10/31/25 18:11:18 Desc Main Document Page 24 of 35

88. It would be inequitable to permit the Insider Receivable Obligors to not fulfill their obligation to pay the Receivables to the Debtor. Accordingly, the Trustee seeks a monetary judgment for the same.

**<u>COUNT VII</u>: PIERCING THE CORPORATE VEIL**

89. The Trustee incorporates his allegations above and below.

90. Under section 544 of the Bankruptcy Code, the Trustee holds the rights of an unsecured creditor for derivative claims emanating from harms against the Debtor. At all times prior to and on the Petition Date, the Debtor had non-insider secured and unsecured debts which remain unpaid.

91. Shareholders, officers, and directors of business entities in Texas are generally shielded from the obligations of the entity itself. However, Texas recognizes several veil-piercing theories which permit the Court to disregard the corporate fiction and hold the owners of the entity liable to remediate an abuse of the corporate form.

92. Courts will pierce the corporate veil in three scenarios (i) where the entity is an alter ego of its owners or affiliates, (ii) where the entity is a mere sham to perpetrate a fraud, and (iii) where the entity is part of a single business enterprise and the corporate form has been used to perpetrate an actual fraud on creditors.

93. Under Texas law, the Trustee may pierce the corporate veil and impose the Debtor's claims and obligations on the Debtor's equity interest owners and their affiliates by establishing that the Debtor's equity interest owners and their affiliates caused the Debtor to be used for the purpose of perpetrating an actual fraud primarily for the direct personal benefit of the holders of the Debtor's interests and their affiliates. Under common law, the Trustee may pierce the corporate veil on the Debtor's equity interest owners and their affiliates by establishing there was

Case 25-03115-sgj Doc 1 Filed 10/24/25 Entered 10/24/25 11:19:13 Desc
Document Page 25 of 35

constructive fraud due to a breach of a legal or equitable duty which was fraudulent due to its tendency to deceive others, to violate confidence or to injure public interests.

94. In support of his veil piercing claims, the Trustee cites, among other things, that the Debtor's equity interest holders and their affiliates:

- At all times, left the Debtor woefully undercapitalized;
- Ran money through the Debtor as though it were a mere instrumentality of other business enterprises and ventures, and otherwise comingled Debtor funds with other funders, maintained consolidated books and tax documents;
- Shared key directors and officers with the entities holding majority ownership interests in the Debtor, while holding Golden Tree Enterprises out as one big family of restaurants;
- Attempted to turn their equity contributions into debt mere weeks before filing the Bankruptcy Case, thus, also showing their total domination of the Debtor and disregard for its corporate form or the rights of its creditors by magically converting millions of dollars of equity investments into alleged debt;
- Siphoned off Debtor's assets to a newly formed subsidiary owned by the Owners in an effort to avoid the Debtor's debt while continuing the Debtor's business at the newly formed subsidiary;
- Controlled how much funds would be advanced to the Debtor without any commitment to advancing such funds, creating a façade of a solvent company and misleading customers and vendors to transact with the Debtor;
- Failed to notify creditors of the termination of business operations;

95. Accordingly, the Trustee seeks a money judgment against each individual or entity identified as Managers, Owners, and the Debtor's affiliates (together the "Equity Holders and Affiliates"), jointly and severally, for the damage caused to the Debtor by the Equity Holders and

Affiliates' treatment of the Debtor as a part of a single business enterprise to perpetrate fraud for the personal benefit of the Equity Holders and Affiliates.

**COUNT VIII TUFTA[1] FRAUDULENT TRANSFER / INSIDER PREFERENCE**

96. The Trustee incorporates his allegations above and below.

97. Pursuant to section 547 of the Bankruptcy Code, the Trustee may avoid a payment to an insider creditor of the Debtor, made on account of antecedent debt when the Debtor was insolvent, and which enabled the creditor to receive more than it would have in a hypothetical Chapter 7 case.

98. As of May 1, 2022, the Debtor had multiple creditors who remain unpaid.

99. Pursuant to section 544 of the Bankruptcy Code, the Trustee stands in the shoes of, and may avoid, a prepetition transfer by the Debtor that an unsecured creditor could avoid.

100. At the time that F.P. Fort Worth 2022, LLC and GFC Leasing received the $732,000 and $68,287.20, respectively, each were insiders of the Debtor. Each was the initial transferee of such transfers or the entity for whose benefit such transfers were made.

101. The purpose and intent of the transfers were to repay F.P. Fort Worth 2022, LLC and GFC Leasing.

102. The payment of the transfers represented payments to creditors on account of antecedent debt, which payments enabled these entities to receive more than they would have in a hypothetical Chapter 7 case of the Debtor.

103. Under TUFTA, an unsecured creditor, and therefore now the Trustee, may avoid a transfer to a creditor who was an insider for an antecedent debt. The transfers to F.P. Fort Worth 2022, LLC and GFC Leasing of $732,000 and $68,287.20, respectively, represented such transfers.

[1] The Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COMM. CODE §§ 24.001 *et. seq*.

Case 25-03115-sgj Doc 1 Filed 11/04/25 Entered 11/04/25 11:40:13 Desc
Document Page 27 of 35

Moreover, through the common control of the Debtor, F.P. Fort Worth 2022, LLC and GFC Leasing knew that the Debtor was insolvent at the time that it made the transfers.

104. Accordingly, pursuant to section 547(b) of the Bankruptcy Code and pursuant to section 544 of the Bankruptcy Code and section 24.006(b) of TUFTA, the Trustee seeks the avoidance of the transfers to F.P. Fort Worth 2022, LLC and GFC Leasing of $732,000 and $68,287.20, respectively, as insider preferences.

105. The Trustee further seeks his reasonable costs and attorney's fees in avoiding and recovering the same under section 24.013 of TUFTA.

**COUNT IX: BANKRUPTCY CODE $807,234.86 FRAUDULENT TRANSFERS**

106. The Trustee incorporates his allegations above and below.

107. The Debtor was insolvent when it made the transfers to the Insider Transferees.

108. As of May 1, 2022, the Debtor had creditors who remain unpaid.

109. F.P Fort Worth 2022, LLC was the initial transferee of $732,000, GFC Leasing was the initial transferee of $68,287.20, and Matthew Parmerlee was the initial transferee of $6,947.66, and all took the same in bad faith knowing of the avoidance and fraudulent nature of the transfers.

110. The Debtor received less than reasonable value for the transfer to GFC Leasing and the transfer to Matthew Parmerlee, and the Debtor received no value whatsoever for the transfer to F.P. Fort Worth 2022, LLC. The transfer to GFC Leasing was listed in the Debtor's schedules as being provided for rent but there was no documentation of a lease, and the transfer was made while the Debtor was engaged in business for which the remaining property was unreasonably small. The transfer to Matthew Parmerlee was also made for the benefit of an insider while the Debtor was engaged in business for which the remaining property was unreasonably small. Accordingly, the transfers to the Insider Transferees were constructively fraudulent transfers.

111. The transfers were also actually fraudulent transfers intended to delay, hinder, and defraud the Debtor's creditors while enriching the Insider Transferees and made by the Debtor with the foregoing intent.

112. Among other things, (i) the Debtor was insolvent; (ii) the Debtor's business had been struggling for years and knew that it would soon need to file for bankruptcy; (iii) the transfer was not included in the Debtor's ledger; and (iv) the transfer was necessary for the Insider Transferees, all insiders, to obtain the transfers, which the Insider Transferees could not otherwise have obtained.

113. Accordingly, pursuant to sections 548(a)(1)(A) and 548(a)(1)(B), the Trustee seeks the avoidance of each of transfers to the Insider Transferees totaling $807,234.86.

**COUNT X** **TUFTA[2] $807,234.86 FRAUDULENT TRANSFER**

114. The Trustee incorporates his allegations above and below.

115. Pursuant to section 544 of the Bankruptcy Code, the Trustee stands in the shoes of, and may avoid, a prepetition transfer by the Debtor that an unsecured creditor could avoid.

116. As of May 1, 2022, the Debtor had creditors who remain unpaid.

117. The Debtor was insolvent when it made the transfers to the Insider Transferees totaling $807,234.86.

118. F.P Fort Worth 2022, LLC was the initial transferee of $732,000, GFC Leasing was the initial transferee of $68,287.20, and Matthew Parmerlee was the initial transferee of $6,947.66, and all took the same in bad faith knowing of the avoidance and fraudulent nature of the transfers.

119. Under sections 24.005(2) and 24.006(a) of TUFTA, the Trustee may avoid a constructively fraudulent transfer.

---

2 The Texas Uniform Fraudulent Transfer Act, TEX. BUS. & COMM. CODE §§ 24.001 *et. seq*.

120. The Debtor received less than reasonable value for the transfer to GFC Leasing and the transfer to Matthew Parmerlee, and the Debtor received no value whatsoever for the transfer to F.P. Fort Worth 2022, LLC. The transfer to GFC Leasing was listed in the Debtor's schedules as being provided for rent but there was no documentation of a lease, and the transfer was made while the Debtor was engaged in business for which the remaining property was unreasonably small. The transfer to Matthew Parmerlee was also made for the benefit of an insider while the Debtor was engaged in business for which the remaining property was unreasonably small. Accordingly, the transfers to the Insider Transferees were constructively fraudulent transfers.

121. Under section 24.005(1), the Trustee may avoid an actually fraudulent transfer.

122. The transfers were also actually fraudulent transfers intended to delay, hinder, and defraud the Debtor's creditors while enriching the Insider Transferees and made by the Debtor with the foregoing intent.

123. Among other things, (i) the Debtor was insolvent; (ii) the Debtor's business had been struggling for years and knew that it would soon need to file for bankruptcy; (iii) the transfer was not included in the Debtor's ledger; and (iv) the transfer was necessary for the Insider Transferees, all insiders, to obtain the transfers, which the Insider Transferees could not otherwise have obtained.

124. Accordingly, pursuant to sections 24.005 and 24.006 of TUFTA, and section 548 of the Bankruptcy Code, the Trustee seeks the avoidance of the transfers to the Insider Transferees totaling $807,234.86.

125. The Trustee further seeks his reasonable costs and attorneys' fees in avoiding and recovering the same under section 24.013 of TUFTA.

**<u>COUNT XI:</u>** **RECOVERY OF AVOIDED TRANSFERS**

126. The Trustee incorporates his allegations above and below.

127. Pursuant to section 550 of the Bankruptcy Code, upon the avoidance of each transfer requested above, the Trustee seeks a recovery of such transfer by way of money judgment against each transferee or subsequent transferee named herein.

**<u>COUNT XII</u>** **OBJECTION TO CLAIM # 6 FILED BY F.P. FORT WORTH 2022, LLC**

128. The Trustee incorporates his allegations above and below as though they were fully set forth here.

129. Claim 6 filed by F.P. Fort Worth 2022, LLC fails to comply with Fed. R. Bankr. P. 3001(c)(1), and the Trustee has not identified any basis for F.P. Fort Worth 2022, LLC to have a right to repayment against the Debtor.

130. Pursuant to Section 704(a)(5) of the Bankruptcy Code, a trustee has a duty to object to the allowance of any improperly asserted claim. Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor." Claim 6 does not provide any documentation or support that any money provided by F.P. Fort Worth 2022, LLC was done so as a loan, nor has the Trustee's review of the Debtor's books and records revealed any documentation.

131. For this reason and any other legally cognizable reasons, the Trustee seeks a judgment disallowing Claim 6.

**<u>COUNT XIII</u>** **OBJECTION TO CLAIM # 7 FILED BY F.P. GRAPEVINE 2023, LLC**

132. The Trustee incorporates his allegations above and below as though they were fully set forth here.

133. Claim 7 filed by F.P. Grapevine 2023, LLC fails to comply with Fed. R. Bankr. P. 3001(c)(1), and the Trustee has not identified any basis for F.P. Grapevine 2023, LLC to have a right to repayment against the Debtor.

134. Pursuant to Section 704(a)(5) of the Bankruptcy Code, a trustee has a duty to object to the allowance of any improperly asserted claim. Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor." Claim 7 does not provide any documentation or support that any money provided by F.P. Grapevine 2023, LLC was done as a loan, nor has the Trustee's review of the Debtor's books and records revealed any documentation.

135. For this reason and any other legally cognizable reasons, the Trustee seeks a judgment disallowing Claim 7.

**<u>COUNT XIV</u>** **OBJECTION TO CLAIM # 8 FILED BY GFC LEASING**

136. The Trustee incorporates his allegations above and below as though they were fully set forth here.

137. Claim 8 filed by GFC Leasing is based on the Lenpar Operations, LLC Line of Credit Agreement dated October 2, 2023, between the Debtor and GFC Leasing Corp. LLC, which is more properly characterized as an equity interest, not debt.

138. Pursuant to Section 704(a)(5) of the Bankruptcy Code, a trustee has a duty to object to the allowance of any improperly asserted claim. Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor." Bankruptcy Rule 3007(d) permits the objection to a proof of claim for non-substantive bases, such as the claim is an interest, not a claim. As further explained in Count IV herein, Claim 8 should be recharacterized as an equity infusion and is not a claim.

139. For this reason and any other legally cognizable reasons, the Trustee seeks a judgment disallowing Claim 8.

**COUNT XV** **OBJECTION TO CLAIM # 9 FILED BY GOLDEN OPERATING CORPORATION**

140. The Trustee incorporates his allegations above and below as though they were fully set forth here.

141. Claim 9 filed by Golden Operating Corporation is based on the Lenpar Operations, LLC Line of Credit Agreement dated October 2, 2023, between the Debtor and Golden Operating Corporation, which is more properly characterized as an equity interest, not debt.

142. Pursuant to Section 704(a)(5) of the Bankruptcy Code, a trustee has a duty to object to the allowance of any improperly asserted claim. Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor." Bankruptcy Rule 3007(d) permits the objection to a proof of claim for non-substantive bases, such as the claim is an interest, not a claim. As further explained in Count IV herein, Claim 9 should be recharacterized as an equity infusion and is not a claim.

143. For this reason and any other legally cognizable reasons, the Trustee seeks a judgment disallowing Claim 9.

**COUNT XVI** **OBJECTION TO CLAIM # 10 FILED BY GTR OPERATING, LLC**

144. The Trustee incorporates his allegations above and below as though they were fully set forth here.

145. Claim 10 filed by GTR Operating, LLC fails to comply with Fed. R. Bankr. P. 3001(c)(1), and the Trustee has not identified any basis for GTR Operating, LLC to have a right to repayment against the Debtor.

146. Pursuant to Section 704(a)(5) of the Bankruptcy Code, a trustee has a duty to object to the allowance of any improperly asserted claim. Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor." Claim 10 does not provide any documentation or support that any money provided by GTR Operating, LLC was done as a loan, nor has the Trustee's review of the Debtor's books and records revealed any documentation.

147. For this reason and any other legally cognizable reasons, the Trustee seeks a judgment disallowing Claim 10.

**<u>COUNT XVII</u>** **OBJECTION TO CLAIM # 11 FILED BY LENPAR FRANCHISING, LLC**

148. The Trustee incorporates his allegations above and below as though they were fully set forth here.

149. Claim 11 filed by Lenpar Franchising, LLC fails to comply with Fed. R. Bankr. P. 3001(c)(1), and the Trustee has not identified any basis for Lenpar Franchising, LLC to have a right to repayment against the Debtor.

150. Pursuant to Section 704(a)(5) of the Bankruptcy Code, a trustee has a duty to object to the allowance of any improperly asserted claim. Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor." Claim 11 does not provide any documentation or support that any money provided by Lenpar Franchising, LLC was done as a loan, nor has the Trustee's review of the Debtor's books and records revealed any documentation.

151. For this reason and any other legally cognizable reasons, the Trustee seeks a judgment disallowing Claim 11.

**<u>COUNT XVIII</u> OBJECTION TO CLAIM # 12 FILED BY LENPAR, LLC**

152. The Trustee incorporates his allegations above as though they were fully set forth here.

153. Claim 12 filed by Lenpar, LLC is based on the Lenpar Operations, LLC Line of Credit Agreement dated October 2, 2023, between the Debtor and Lenpar, LLC, which is more properly characterized as an equity interest, not debt.

154. Pursuant to Section 704(a)(5) of the Bankruptcy Code, a trustee has a duty to object to the allowance of any improperly asserted claim. Section 502(b)(1) of the Bankruptcy Code provides that a claim may not be allowed to the extent that “such claim is unenforceable against the debtor.” Bankruptcy Rule 3007(d) permits the objection to a proof of claim for non-substantive bases, such as the claim is an interest, not a claim. As further explained in Count IV herein, Claim 12 should be recharacterized as an equity infusion and is not a claim.

155. For this reason and any other legally cognizable reasons, the Trustee seeks a judgment disallowing Claim 12.

## VI. <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, the Trustee requests that the defendants be cited to appear and to answer this Complaint and that he have a judgment as follows:

(i) all equitable relief requested herein;

(ii) a judgment disallowing the Insider Proofs of Claim;

(iii) a money judgment against Management for its breaches of fiduciary duty;

(iv) avoidance of all transfers requested herein;

(v) recovery of all transfers requested herein by way of money judgment;

(vi) reasonable attorney's fees to the extent provided by applicable law;

(vii) prejudgment and postjudgment interest to the extent provided by applicable law; and

(viii) such other and further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 30th day of October, 2025.

**MUNSCH HARDT KOPF & Harr, P.C.**

By: *<u>/s/ Thomas Berghman</u>*

Thomas D. Berghman
Texas Bar No. 24082683
J. Kyle Jaksa
Texas Bar No. 24120923
Jacob J. King
Texas Bar No. 24136951
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Email: tberghman@munsch.com
kjaksa@munsch.com
jking@munsch.com

**COUNSEL FOR SCOTT M. SEIDEL THE CHAPTER 7 TRUSTEE**

B1040 (FORM 1040) (12/24)

| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br><br>SCOTT M. SEIDEL, TRUSTEE | **DEFENDANTS**<br>MARK PARMERLEE, MICHAEL PARMERLEE, DIANE PARMERLEE, MATTHEW PARMERLEE, HENRY LEONARD, CHRIS MITCHELL, LENPAR, LLC, GOLDEN TREE RESTAURANTS, LLC, MP INTERESTS, LTD., F.P. GRAPEVINE 2023, LLC, F.P. FORT WORTH 2022, LLC, GFC LEASING CORP., LLC, MP INTERESTS MANAGEMENT, LLC, GOLDEN OPERATING CORPORATION, MARSHALL FISCO JR., JAMES MAXWELL NANCY JACOBI, DAVID RUTOWSKI, AND CHERYL BULLARD |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br><br>Thomas Berghman<br>Munsch Hardt Kopf & Harr P.C. 500 N. Akard Street, Suite 4000 Dallas, Texas 75201 (214) 855-7500 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**This cause of action seeks the recovery of money as a preference, fraudulent transfer, and breaches of duty. This actions also looks to recharacterize and subordinate claims. Sections 510, 544, 547, 548, 550, and 704 of the Bankruptcy Code.**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- [3] 12-Recovery of money/property - §547 preference
- [2] 13-Recovery of money/property - §548 fraudulent transfer
- [5] 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
- [4] 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- [1] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR **Lenpar Operations, LLC** | BANKRUPTCY CASE NO. 23-32492 | |
| DISTRICT IN WHICH CASE IS PENDING Northern District of Texas | DIVISION OFFICE Dallas | NAME OF JUDGE Stacey G.C. Jernigan |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) *<br>/s/ Thomas Berghman* | | |
| DATE October 31, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Thomas D. Berghman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

BTXN 090 (rev. 12/09)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | | |
|---|---|---|---|
| In Re: | | § | |
| Lenpar Operations, LLC | | § | |
| | | § | Case No.: 23−32492−sgj7 |
| | Debtor(s) | § | Chapter No.: 7 |
| Scott M. Seidel | | § | |
| | Plaintiff(s) | § | Adversary No.: 25−03115−sgj |
| vs. | | § | |
| Mark Parmerlee et al. | | § | |
| | Defendant(s) | § | |

# ORDER REGARDING ADVERSARY PROCEEDINGS TRIAL SETTING AND ALTERNATIVE SCHEDULING ORDER

An adversary complaint is set for trial routinely at the time of its filing. Special settings or pretrial conferences may be scheduled by contacting the appropriate Courtroom Deputy.

**TRIAL** is set before the **Honorable Stacey G Jernigan** at **1100 Commerce Street, 14th Floor, Courtroom #1, Dallas, Texas 75242** the week of **April 20, 2026**. Docket call for this trial will be held on **April 13, 2026** at **01:30 pm** at **1100 Commerce Street, 14th Floor, Courtroom #1, Dallas, Texas 75242**. A pretrial conference shall be scheduled by the parties at least seven (7) calendar days prior to trial docket call in a complex adversary proceeding if the parties anticipate that trial will exceed one day or if there are preliminary matters that should be addressed by the Court prior to the commencement of trial.

## PART I: INSTRUCTIONS

1. Plaintiff is responsible for ensuring that proper service is provided to each defendant. The Clerk shall issue one original summons, which shall be conformed by the plaintiff for service on multiple defendants. Federal Bankruptcy Rule 7004(e) requires you to serve the fully completed **SUMMONS** form and a copy of the **COMPLAINT** on each defendant within seven (7) days of issuance. In addition, the Court also directs that this **ORDER *be served with the* SUMMONS and COMPLAINT.**

2. Plaintiff shall file a **RETURN** on the **SUMMONS** with a **CERTIFICATE OF SERVICE** that provides the name and address of each party served and the manner of service.

3. If a trial setting is passed for settlement at trial docket call and no written request is filed to retain the case on the Court's docket, an automatic Dismissal Without Prejudice shall be entered on or after four (4) weeks. The Court's Trial Calendar is available on the court's web site at www.txnb.uscourts.gov.

## PART II: GENERAL PROVISIONS GOVERNING DISCOVERY

1. Unless otherwise ordered by the Court, the disclosures required by Federal Bankruptcy Rule 7026(a) shall be made within fourteen (14) days of the entry of a scheduling order, including the Alternative Scheduling Order contained in Part III below (which shall become effective on the forty−sixth day following the entry of this Order.

2. Unless the parties agree or the Court orders otherwise, Federal Bankruptcy Rule 7026(f) requires that parties shall confer to consider the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Federal Bankruptcy Rule 7026(a)(1), to develop a proposed discovery plan, and to submit a proposed scheduling order. The parties shall confer with each other regarding these matters within thirty (30) days of the service of the Summons unless the Court orders otherwise.

3. During such conference, the parties may agree to waive the requirement of submitting their own proposed scheduling order and may follow the terms and deadlines contained in the Alternative Scheduling Order set forth in Part III below (the "Alternative Scheduling Order"). If the parties do not submit a proposed scheduling order or do not schedule a status conference with the Court to discuss the provisions and deadlines of a scheduling order within forty−five days of the filing of this adversary proceeding, then the parties are deemed to have consented to the terms of the Alternative Scheduling Order.

## PART III: ALTERNATIVE SCHEDULING ORDER

The Court directs compliance with the following schedule:

1. Discovery must be completed forty−five (45) days prior to Docket Call. The names and addresses of experts must be exchanged sixty (60) days prior to Docket Call.

2. A Joint Pretrial Order in compliance with Local District Court Rule 16.4 shall be filed, served, and uploaded for Court entry seven (7) days prior to Docket Call. All counsel (or a pro se party) are responsible for preparing the Joint Pretrial Order, which shall contain the following: (a) a summary of the claims and defenses of each party; (b) a statement of stipulated facts; (c) a list of the contested issues of fact; (d) a list of contested issues of law; (e) an estimate of the length of trial; (f) a list of additional matters which would aid in the disposition of the case; and (g) the signature of each attorney (or pro se party).

3. Each exhibit shall be marked with an exhibit label. Except for impeachment documents, all exhibits, along with a list of witnesses to be called, shall be exchanged with opposing counsel (or pro se party) fourteen (14) days prior to Docket Call. Each party shall also file a list of exhibits and witnesses fourteen (14) days prior to Docket Call. All exhibits not objected to in writing by Docket Call shall be admitted into evidence at trial without further proof, except for objections to relevance. Written objections to exhibits will be taken up either at the beginning or during the course of the actual trial or at any pretrial conference.

4. Written Proposed Findings of Fact and Conclusions of Law shall be filed seven (7) days prior to Docket Call. Trial briefs shall be filed addressing contested issues of law seven (7) days prior to Docket Call.

5. Unless otherwise directed by the Presiding Judge, all dispositive motions must be heard no later than fourteen (14) days prior to Docket Call. Accordingly, all dispositive motions must be filed no later than forty−five (45) days prior to Docket Call, unless the Court modifies this deadline.

6. All parties and counsel must certify to full compliance with this Order at Docket Call. If a resetting is allowed by the Court, the plaintiff or plaintiff's attorney shall notify all other parties and shall file with the Clerk a certificate of service indicating the manner, date, and to whom notice was given.

7. If the case is reset, all the deadlines in Part III nos. 1 through 5 will be shifted to the newly scheduled Docket Call date in the absence of a contrary Court order.

8. Sanctions may be imposed for failure to comply with this Order.

DATED: 10/31/25

FOR THE COURT:
Stephen J Manz, Clerk of Court

by: /s/Michael Edmond, Deputy Clerk